LORA MARLING v. CITY OF LITTLE ROCK

5-4746                                   435 S.W. 2d 94

Opinion Delivered December 23, 1968

*Spitzberg, Mitchell & Hays* for appellant.

*Joseph C. Kemp* and *Perry V. Whitemore* for appellee.

LYLE BROWN, Justice.    This is a zoning case. Appellant Lora Marling was unsuccessful in her application to the Little Rock Planning Commission to change the zoning of her residence at 4700 West Markham Street from B-Family to E-1, Quiet Business.    She filed this suit to enjoin the City of Little Rock from interfering with her planned use of the property for a quiet business enterprise.    She alleged the city's action to be un-

reasonable, arbitrary, and to constitute a denial of due process. That is the sole issue on appeal from the chancellor's findings which denied relief to the property owner.

Appellant owns Lots 12 and 13, Block 6, Elmhurst Addition. The addition consists of forty acres which was platted into 200 lots in 1910. It appears to contain approximately 190 residences, most of which have been in existence for many years. The south boundary of the sub-division is West Markham Street. Appellant's home faces south on Markham with Palm Street running along the east side of the house. The addition is exclusively residential. An effort was made in 1965 to rezone two lots located some 200 feet east of the Marling property and in Elmhurst Addition. That application was rejected. *Downs* v. *City of Little Rock,* 240 Ark. 623, 401 S.W. 2d 210 (1966).

The traffic count in this area on Markham is one of the heaviest in Little Rock. Across the street and diagonal to the subject property are the Medical Center and the State Hospital. Those structures are set back a considerable distance. Farther west on the south side of the street are War Memorial Park and St. Vincent Infirmary, then the tremendous commercial development in the area of West Markham and University Avenue. Those are only a few of the factors contributing to the heavy four-lane traffic. On the north (appellant's) side of Markham, and west to University, it may fairly well be described as being zoned commercial and quiet business, excepting of course the frontage in Elmhurst Addition. Other than the Markham Street frontage, the remainder of the subdivisions north of the street generally retain their residence and apartment classifications. Appellant's home is two blocks west of Glendale Addition which fronts Markham on the north. In Glendale, most of the Markham Street frontage lots have multifamily, commercial, and quiet business classifications. The next three and one-half blocks

of Glendale, which are situated east of, and alongside Elmhurst, have either apartment or residence classifications, with the latter predominating. Summarizing, the Elmhurst frontage on Markham is the only frontage in the immediate vicinity used exclusively for residential purposes.

Appellant cites these factors which she contends distinguish her case from *Downs* v. *City of Little Rock*, *supra*: Since *Downs*, the State Health Department has erected a six-story office building on the State Hospital grounds across the street and slightly west of the subject property; the Mall Shopping Center has opened at Markham and University; St. Vincent has enlarged its facility; a group of ten residences immediately west of Elmhurst have been declared by the planning commission as favorable for quiet business (that area being one and one-half blocks west of appellant); the combined east-west traffic has substantially increased since *Downs;* and the residence in the *Downs* case does not actually face Markham—it faces east and the side of the house is adjacent to Markham. Certainly those considerations, which were presented to the trial court and thoroughly abstracted here, should be evaluated, but alongside other important elements both factual and legal.

On behalf of appellant, the traffic count, the additional commercial developments, and changes in frontal zoning classifications were stipulated. C. V. Barnes, a real estate counselor and appraiser, testified for appellant. He concluded that the Marling property was no longer desirable for residential use, citing the changed conditions heretofore enumerated. He asserted that the granting of the requested change in zoning classification would not adversely affect the remaining property in Elmhurst Addition. He also concluded that the denial of Mrs. Marling's application was arbitrary.

It was also shown by appellant that the planning commission staff changed the address on appellant's

application from 4700 Markham to 100 North Palm, which latter address would be correct if the house faced Palm rather than Markham. It is appellant's theory that the change was made so the zoning application would be evaluated from the standpoint that the house faced Palm and sided on Markham. The city's witness testified that the plot plan submitted by the applicant showed no sidewalk leading from Markham to the front of the house; it showed a sidewalk leading from Palm to the house. That factor, along with the fact that the lots are platted east and west, assertedly caused the error. However, it was explained that in checking out the area it was noticed that the house appeared to face south on Markham. We assume any confusion in the minds of the planning commission about the location of the house was clarified in the public hearing.

Russell McLean, a professional land appraiser and former member of the planning commission, testified for the city. As did Mr. Barnes, he showed a thorough familiarity with the general area. He concluded that the recited changes did not affect adversely the use of the Marling property as a residence. He described the Elmhurst neighborhood as stable, mostly homeowned, and well maintained. He saw no difference in whether the house faced Markham or Palm. He was of the opinion that the rezoning of this property would gradually cause an erosion in values of the adjacent residences. He was further of the opinion that the ten residents one and one-half blocks west of the subject property made a mistake in pressing for rezoning. He stated that their hopes for considerable profits from "quiet business" prospects had not matured and recounted that not one of them had sold.

Henry deNoble testified for the city. At that time he was director of community development for Little Rock and had been so employed for approximately nine years. It was stipulated that he was an expert. All of the factors in the general area, most of which we have

recited, were considered by him in reaching a conclusion which favored rejection of the application. He stressed the undesirability of spot zoning. He compared it to a cancer, asserting that it would immediately affect adjacent residences and gradually call for rezoning to the north. He emphasized that there was no natural buffer between appellant's property and the neighbors, which fact he said causes rezoning to spread. The only characteristic which he conceded to have an unfavorable impact on the Marling residence was the traffic; however, he predicted a reduction when the east-west expressway and other planned street improvements are completed. He contended that the changes in the area since the decision in *Downs* do not justify a distinction between the Downs property and the Marling property.

Four property owners residing in Elmhurst testified in opposition to the application. Collectively they described the addition as a quiet, well-kept, and home owner neighborhood; it is in walking distance of several churches; a Catholic school, a public junior high school, and a grade school are in walking distance; and the granting of this single permit would, in their opinion, be the opening wedge for other reclassifications to the detriment of the neighborhood. Mrs. Marling did not testify.

In the trial court the burden was on the landowner to prove preponderantly that the action of the city was arbitrary. *Lindsey* v. *City of Camden*, 239 Ark. 736, 393 S.W. 2d 864 (1965). On appeal it is our responsibility to determine whether the trial court's finding was contrary to a preponderance of the evidence. *City of Little Rock* v. *Garner*, 235 Ark. 362, 360 S.W. 2d 116 (1962). The chancellor had a difficult decision. The trend in a wide area along Markham has been toward commercial and private business use; since the decision in *Downs* considerable changes have taken place; and one experienced witness testified that the Marling property was no longer suitable for residential use. Then

two men experienced in such matters insisted that the character of appellant's property had not been affected by the changes. We perceive that the chancellor was impressed, as are we, with an abundance of evidence pertaining to the danger of spot zoning. That danger was emphasized where, as here, there is no existing barrier to prevent the spreading of rezoning into the exclusively residential area to the north. Those residents have a stake in this case and are entitled to consideration. Appellant's exercise of her rights of property must be recognized; however, we held in an early zoning case that her enjoyment of its use may be reasonably restrained so as not to cause injury to the property rights of her neighbors. See *Herring* v. *Stannus,* 169 Ark. 244, 275 S.W. 321 (1925). This is true even though, as was said in *Downs,* the best and most remunerative use of the two lots in question might be for quiet business.

We are unable to say that the chancellor's findings were against the preponderance of the evidence.

Affirmed.

BYRD, J., dissents.

CONLEY BYRD, Justice. I dissent to the affirmance of this case because as I understand the facts both the City of Little Rock and the majority of this Court are denying to Mrs. Marling privileges that are granted to others similarly situated.

The record here shows that the property abutting Markham Street on the North from Cedar Street, the 4000 block, to McKinley Street, the 6500 block, is all zoned "E-1" Quiet Business or "F" Commercial except for the three block area where Mrs. Marling's property is located. In other words commencing one block east of Mrs. Marling, the City permits a use of the property abutting Markham Street for a five block area to the east that is denied to Mrs. Marling. Then com-

mencing one and one-half blocks west of Mrs. Marling the City for a twenty-six block area to the west permits a use of the property abutting Markham Street, as does Mrs. Marling's property, that is denied to Mrs. Marling.

For these reasons I would reverse the judgment of the trial court.