STEELE INVESTMENT COMPANY
*v.* CITY of FAYETTEVILLE

75-156                                   529 S.W. 2d 653

Opinion delivered November 24, 1975

*Ball, Gallman & Martin,* for appellant.

*James N. McCord,* for appellee.

GEORGE ROSE SMITH, Justice. This is a zoning case. The appellant, Steele Investment Company, owns a 400-acre tract on the west side of Highway 71 Business, which runs north through Fayetteville. The property was formerly used for raising green beans. In 1966 the highway department obtained a right-of-way across the tract for the construction of Highway 71 By-pass. That left on the south side of the By-pass the 45-acre tract involved in this case, which is labeled "Steele" upon the following sketch taken from one of the exhibits:

Since then the property has been used for pasturing cattle.

In 1973 Steele applied to the city to change the 45-acre tract from an agricultural or residential classification to a

commercial (C-2) classification. The City Planning Commission and the Board of Directors refused to rezone the entire tract. The Board, however, did rezone 8.9 acres, lying east of the dotted line on the sketch. That partial rezoning gave a C-2 classification to a depth of 617 feet back from Highway 71 Business, which is the same depth and classification as that already applicable to James E. Lindsey's rectangular tract to the south, marked "C-2" on the sketch.

Steele then brought this suit in the chancery court to set aside the city's action as arbitrary, capricious, and unreasonable. The chancellor, in a carefully prepared, detailed opinion, denied relief. There is no dispute about the standard for review in this court. We sustain the decree unless the chancellor's finding that the city did not act arbitrarily is against the preponderance of the evidence. *Downs* v. *City of Little Rock*, 240 Ark. 623, 401 S.W. 2d 210 (1966).

We cannot say that the Planning Commission and the Board of Directors acted arbitrarily. Highway 71 Business, as it passes through Fayetteville and continues north to Springdale, has many commercial establishments on both sides of the road. The traffic engendered by those places of business, combined with the through traffic on the highway, created such congestion that the movement of vehicles was materially slowed down. It was for that reason that the highway department constructed the By-pass, to afford through traffic an alternative route avoiding the congestion on Highway 71 Business.

The city's comprehensive long-term plans for the By-pass harmonize with the highway department's rezoning. There are several major east-west thoroughfares that cross the By-pass. Those intersections are controlled by traffic lights. The city intends to restrict commercial zoning on the By-pass to the vicinity of those major intersections. In that way the city expects to avoid on the By-pass the traffic congestion that was created by the proliferation of commercial establishments along Highway 71 Business.

We cannot say that a clear preponderance of the evidence shows the city's plan to be arbitrary, as applied to

Steele's 45-acre tract. As in most zoning controversies, Steele seeks a commercial classification in order to sell or use all or part of his land more profitably than is possible under its present classification. That single consideration, however, is not controlling, else spot zoning would be encouraged rather than discouraged by the law. The city's proof indicates that the volume of traffic on the By-pass, with its attendant noise, will not be so great as to prevent the use of Steele's land in its present classification. The chancellor found that proof to be persuasive.

We do not give especial weight to the fact that Steele's application for rezoning was not opposed by neighboring landowners. It is fair to suppose that other property owners along the By-pass would like to see Steele's property devoted to commercial use, strengthening their own claim to like treatment. The chancellor, however, chose to give the city's long-range plan a chance to prove its worth, rather than weakening or perhaps destroying it at the outset. We cannot say that his decision is clearly against the weight of the evidence.

Affirmed.

BYRD, J., dissents.